**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas Machowicz, | No. CV-21-00316-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Maricopa County, *et al.*, | |
| Defendants. | |

At issue is Defendant Phoenix Police Chief Jeri Williams's Motion for Summary Judgment (Doc. 57, MSJ), to which Plaintiff Thomas Machowicz filed a Response (Doc. 61, Resp.), and Defendant filed a Reply (Doc. 63, Reply). No party requested oral argument and the Court did not find it necessary. *See* LRCiv 7.2(f). For the reasons set forth below, the Court grants Defendant's Motion for Summary Judgment.

**I.    BACKGROUND**

Plaintiff filed his Amended Complaint on March 17, 2021, in which he alleges as follows.[1] (Doc. 11, Am. Compl.) Plaintiff is a freelance photojournalist working in Phoenix, Arizona, who documented a demonstration against alleged police brutality around Phoenix Police Headquarters on May 30, 2020. (Am. Compl. ¶¶ 26, 29–30.) While he was photographing the event, Phoenix Police Department ("PPD") officers deployed gas to disperse demonstrators. (Am. Compl. ¶ 31.) Video footage shows Plaintiff running away

---

[1] The Court dismissed Plaintiff's claims against Maricopa County and the Phoenix Police Department in a prior order. (Doc. 16.)

from the gas when an unnamed PPD officer aimed and fired a rubber bullet at him, striking his lower back. (Am. Compl. ¶¶ 32, 34–35.)

Plaintiff further alleges a second shot struck him in the ribs, knocking him to the ground. (Am. Compl. ¶ 37.) Also, a third bullet allegedly struck him in the back of the head, causing him to lie motionless on the ground, and no officer attempted to aid him. (Am. Compl. ¶¶ 38–40.)

Plaintiff also states the PPD subjected protesters, onlookers, and citizens to tear gas and rubber bullets on other occasions. (Am. Comp. ¶ 45.) He claims Defendant, as a policymaker for the PPD, "would have authorized the practice and policy of using non-lethal measures, such as gas and rubber bullets, to disperse demonstrators." (Am. Compl. ¶ 47.)

Plaintiff brings the pending claims under 42 U.S.C. § 1983 for a violation of the freedom of press under the First Amendment and for excessive force under the Fourth and Fourteenth Amendments to the United States Constitution. Both claims are against Defendant Williams in her individual and official capacities.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 232.

1  When the moving party does not bear the ultimate burden of proof, it "must either produce
2  evidence negating an essential element of the nonmoving party's claim or defense or show
3  that the nonmoving party does not have enough evidence of an essential element to carry
4  its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*,
5  210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party carries this initial burden of
6  production, the nonmoving party must produce evidence to support its claim or defense.
7  *Id.* at 1103. Summary judgment is appropriate against a party that "fails to make a showing
8  sufficient to establish the existence of an element essential to that party's case, and on
9  which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

10  In considering a motion for summary judgment, the court must regard as true the
11  non-moving party's evidence, as long as it is supported by affidavits or other evidentiary
12  material. *Anderson*, 477 U.S. at 255. However, the non-moving party may not merely rest
13  on its pleadings; it must produce some significant probative evidence tending to contradict
14  the moving party's allegations, thereby creating a material question of fact. *Id.* at 256–57
15  (holding that the plaintiff must present affirmative evidence in order to defeat a properly
16  supported motion for summary judgment); *see also Taylor v. List*, 880 F.2d 1040, 1045
17  (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on
18  conclusory allegations unsupported by factual data." (citation omitted)).

### III. ANALYSIS

#### A. Official Capacity

Defendant first argues she is entitled to summary judgment on Plaintiff's "disguised official capacity claims" because she is not a policymaker for the PPD. (MSJ at 4.) Plaintiff argues Defendant is a policymaker because she had final policymaking authority in a particular area at issue. (Resp. at 9.)

A claim against a state or municipal official in her official capacity is treated as a claim against the entity itself. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). Municipalities, as well as municipal officials sued in their official capacity, are subject to liability under § 1983 when their policies subject an individual to the deprivation of any

right guaranteed to him by the Constitution. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Tanner v. Heise*, 879 F.2d 572, 582 (9th Cir. 1989). The policy can be a government policy or custom made by lawmakers or by those whose edicts or acts fairly represent official policy. *Tanner*, 879 F.2d at 582. Plaintiff's official capacity claim requires that Defendant had final policymaking authority concerning the particular issues of crowd control and use of force, that Defendant's actions in this area represented official policy, and that the officers at the scene followed that representation of official policy. *See McMillan v. Monroe Cnty.*, 520 U.S. 781, 785 (1997).

### 1. Defendant's Policymaking Authority

Plaintiff argues Defendant's actions represent official policy or custom. (Resp. at 9.) Only those municipal officials who have final policymaking authority may by their actions subject the government to § 1983 liability. *St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). To determine whether an individual has final policymaking authority, courts ask whether the individual has authority "in a particular area, or on a particular issue." *McMillan*, 520 U.S. at 785. Specifically, courts must identify officials who speak with final policymaking authority for the local government actor *concerning the action alleged to have caused the particular constitutional or statutory violation at issue. Id.* (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, (1989)). Further, an official's final policymaking authority in a particular area is a question of state or municipal law. *McMillan*, 520 U.S. at 785.

Plaintiff argues the Phoenix City Code grants Defendant final policymaking authority. (Resp. at 12.) Plaintiff refers to the City Code, Phoenix Charter, Ch. II § 2-119 (a)–(b), which recites:

> There shall be a Police Department, headed by a Director of the Police Department. He shall be responsible for the enforcement of State laws and City ordinances, protection of life and property, preservation of law and order, investigation of crimes, and suppression of vice and shall direct the proper assignment of police officers, establish training programs, maintain records, provide traffic control and enforcement, cooperate with other law

- 4 -

enforcement agencies, establish rules and departmental policies and be responsible for the custody of City prisoners.[2]

Plaintiff specifically argues the City Code grants the Police Chief responsibility to establish training programs and supervise and direct the police. (Resp. at 12.) Plaintiff further contends Defendant could prevent changes to training manuals from going into effect if she disagreed with them and could implement policies concerning the use of excessive force in response to prior incidents. (Resp. at 6-7.) Through the City Code, Defendant had some policymaking authority in the areas of training and supervising officers.[3]

### 2. Policy or Custom Created by Defendant's Conduct

The Court must next evaluate whether Defendant's conduct effectively created a policy concerning the constitutional violation at issue. *McMillan*, 520 U.S. at 785. Here, Plaintiff alleges his First Amendment right of freedom of the press was violated when officers used excessive force against him. (Am. Compl. ¶¶ 48-76.)

Plaintiff attempts to connect Defendant's authority over officer training with an alleged policy of using excessive force by arguing Defendant did "nothing to change the policies or customs of [the Tactical Response Unit ("TRU")]," in response to reports concerning officers' use of force. (Resp. at 4.) To establish a failure to adequately train as a policy or custom, the failure must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Plaintiff argues Defendant did not make changes even though she was "willing to look at training methods" after receiving reports concerning the PPD's use of force. (Resp. at 4.) But even if Defendant chose not to update PPD training methods,

---

[2] "As set forth in the Charter, each department shall be headed by a director and the work of departments may be distributed among divisions. In addition to the official title as 'Director,' Directors may also, with City Manager approval, use a working title consistent with industry practices. If approved, the working title shall have the same meaning in any rules, regulations, policies or procedures as the official title." City Code, Phoenix Charter, Ch. II § 2-7.

[3] In *Puente v. City of Phoenix*, No. CV-18-02778-PHX-JJT, 2022 WL 357351 (D. Ariz. Feb. 7, 2022), the Court found the City Council and City Manager had ultimate policymaking authority under Phoenix City Charter Ch. III §§ 1, 2.

that does not demonstrate deliberate indifference. Specifically, Plaintiff concludes the policies concerning excessive force were deficient because there were two prior incidents involving alleged excessive force, but he provides no evidence, beyond this conclusory statement, that the existing policies or customs were deficient or needed to be updated. Accordingly, Plaintiff's evidence is not sufficient for a reasonable trier of fact to conclude that Defendant's alleged decision not to update training manuals created a policy of using excessive force during protests.

Plaintiff also attempts to relate Defendant's policymaking authority concerning officer supervision to an alleged policy of using excessive force during protests. Plaintiff alleges Defendant had the power to overrule every single officer at the scene and order them to stop using excessive force. (Resp. at 6.) He fails, however, to show that Defendant created a policy by not telling officers at the scene to stand down. More broadly, Plaintiff fails to demonstrate how inaction during a single event can create a custom or policy. *See Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.")

Plaintiff further argues Defendant created a policy allowing officers to use excessive force when she did not discipline officers or make substantive changes after a prior incident *allegedly* involving excessive force. (Resp. at 11.) Notwithstanding Plaintiff's improper introduction of this legal argument in his Controverting Statement of Facts[4] (*see* Doc. 62 at 10), his argument is effectively that Defendant created policy through ratification. To create policy by ratification, a final policymaker must approve a subordinate's decision *and the basis for it*. *Praprotnik*, 485 U.S. at 127. The policymaker must also make a deliberate choice to follow a course of action among various alternatives. *Pembaur v. City*

---

[4] The Controverting Statement of Facts must set forth either 1) paragraphs indicating whether the party disputes the statement of fact set forth in the moving party's corresponding paragraph or 2) additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party. LRCiv 56.1(b). The Local Rules do not permit legal argument in the Controverting Statement of Facts.

*of Cincinnati*, 475 U.S. 469, 483 (1986); *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992).

For example, the *Gillette* court held a city manager's acquiescence in the fire chief's termination of the plaintiff did not ratify the decision absent evidence of affirmative or deliberate conduct. *Gillette*, 979 F.2d at 1348. The court reasoned the plaintiff only established that the city manager did not overrule a discretionary decision, and that a decision not to overrule was not a "deliberate choice to endorse" the decision. *Id.* Like the city manager's decision not to overrule his subordinate's discretionary decision in *Gillette*, Defendant here allegedly chose not to discipline officers for their discretionary decisions. Accordingly, Plaintiff fails to proffer sufficient facts indicating Defendant made a deliberate choice to support the allegedly excessive force used. Plaintiff also fails to put forward facts indicating that discipline was necessary, but instead improperly concludes the force used in the prior incidents was unconstitutional and thus discipline was required.

Plaintiff also points to Defendant's public compliments concerning officer conduct during prior incidents allegedly involving excessive force (Resp. at 11), but that evidence is similarly insufficient for ratification. Specifically, Plaintiff does not produce any facts that Defendant complimented the officers' use of force, which is the alleged constitutional violation at issue. Even if Defendant had specifically complimented the officers' use of force, Plaintiff fails to provide evidence that Defendant complimented an unconstitutional use of force. Although Plaintiff states the use of force during the prior incidents was excessive, Plaintiff identifies no decision in comparable circumstances finding that it was.[5]

Accordingly, Plaintiff fails to produce sufficient facts from which a reasonable trier of fact could conclude Defendant created a policy or custom of using excessive force.

### 3. Custom Created by the Phoenix Police Department

Plaintiff next argues the officers' conduct was in accordance with PPD customs because the PPD allegedly "has a long and troubled history with abuse of power." (Resp.

---

[5] The complicated nature of any potential claims related to a separate incident between PPD and protestors does not lend itself to a straightforward conclusion about whether excessive force was used in the separate incident, and of course the Court would not conduct a mini-trial on a separate matter.

- 7 -

at 2.) A custom is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *Praprotnik*, 485 U.S. at 127. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Plaintiff's basis for the PPD's "long and troubled history" is that its practices are under investigation by the Department of Justice. (Resp. at 2.) Plaintiff does not provide any conclusions the Department of Justice reached in that investigation and the investigation concerns several areas of law enforcement other than the use of excessive force. (Resp. at 2.) Accordingly, a reasonable trier of fact could not conclude that being under investigation is sufficient evidence of a PPD custom allowing officers to use excessive force.

Plaintiff further argues that two prior instances of alleged excessive force in 2016 and 2017 are also evidence of a custom. (Resp. at 3.) Concerning the 2016 incident, Plaintiff advances that "PPD officers indiscriminately and without warning, fired 'less lethal' weapons and 'chemical weapons' purportedly as a 'crowd-control measure,' into . . . protesters." (Resp. at 3.) Concerning the 2017 incident, Plaintiff contends that "PPD, without warning, fired 'more than 590 kinetic and chemical projectiles' into a crowd." (Resp. at 3.) Plaintiff also submits that the protestors in each incident were politically liberal, like the protesters Plaintiff attempted to document. (Resp. at 13.)

But for the alleged similarity of political leaning, Plaintiff's comparison is ineffective because it focuses almost exclusively on the outcome, instead of the steps leading to the officers' actions. Through this comparison, Plaintiff alleges the PPD has a general custom of using excessive force against politically liberal protestors. For such a sweeping custom, two prior incidents, which occurred three and four years before the actions at issue, are insufficient to establish that the officers' conduct was "a traditional method of carrying out policy." *See Trevino*, 99 F.3d at 918.

Plaintiff also fails to show that excessive force was used in either prior incident. As the Court notes *infra*, Plaintiff has not provided evidence that a court determined the use of force by PPD on the crowds during the 2016 or 2017 protests was unconstitutional. Accordingly, Plaintiff fails to proffer sufficient facts for a reasonable trier of fact to conclude the PPD had an official custom allowing excessive force.

If Plaintiff did supply sufficient facts for a reasonable trier of fact to conclude PPD had a policy or custom to use excessive force, the Court would determine if the officers at the scene acted pursuant to such policy. *McMillan*, 520 U.S. at 785. However, although Plaintiff attempts to connect Defendant's policymaking authority concerning training and supervision to a policy or custom of using excessive force, the connections advanced are too attenuated and conclusory. Moreover, Plaintiff's attempts to demonstrate a PPD custom by way of comparison to prior similar conduct are unsupported. Therefore, Plaintiff's official capacity claim fails.

### B.   Individual Capacity

Plaintiff also argues Defendant is liable for the officers' conduct in her individual capacity (Resp. at 14) because she set in motion a series of acts by others that she knew, or reasonably should have known, would cause constitutional injury. *See Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991). Plaintiff relies on *Larez*, where the court held the jury's verdict—that the police chief, in his individual capacity, was responsible for the defendants' constitutional deprivations—was not in plain error. *Id.* There, however, the jury heard evidence from an expert witness on police department procedures. *Id.* The expert testified that he would have disciplined the individual officers and would have established new procedures to avoid the reoccurrence of similar instances of the use of excessive force. *Id.* Additionally, the police chief in *Larez* signed a letter informing a defendant that his complaints against the officers would not be sustained. *Id*. at 646.

Here, by contrast, Plaintiff only supplies conclusory statements that discipline and changes were needed after prior incidents. (Resp. at 15.) Unlike the expert testimony in *Larez*, Plaintiff's conclusions are his own and are unsupported by independent facts.

Additionally, although the *Larez* police chief signed a letter dismissing a defendant's complaint, Plaintiff does not demonstrate similar affirming conduct here. Plaintiff, by contrast, argues Defendant's public compliments about officer conduct following prior incidents signaled approval to use excessive force. But Plaintiff does not show those compliments were specifically directed toward the use of force. Even assuming the compliments concerned the use of force, Plaintiff fails to proffer evidence of Defendant's knowledge that the force used was unconstitutional when she complimented the officers. More generally, Plaintiff fails to show the force used was unconstitutional.

Plaintiff also asserts Defendant should have known a constitutional injury would occur when she chose not to change the rules of engagement before the protest at issue, or when she did not tell the officers to stand down. (Resp. at 16.) Plaintiff specifically reasons Defendant knew the officers would target journalists—since the PPD released a statement that officers would arrest journalists found near an unruly protest—and therefore should have known her inaction would lead officers to use excessive force. Plaintiff does not, however, bridge the gap between a plan to arrest journalists near an unruly protest and the allegedly unconstitutional force used. Specifically, there are no facts to suggest Defendant knew the officers would use excessive force against journalists.

Additionally, Plaintiff's basis for Defendant's alleged knowledge of impending constitutional injury is rooted exclusively in a newspaper article. (Doc. 62, Separate Statement of Facts ¶ 21.) Even if this evidence is hearsay[6], the substance—that Defendant apologized for the statement by the PPD—is insufficient for a reasonable trier of fact to conclude that Defendant should have known her inaction would lead to the unconstitutional use of force.

Plaintiff has therefore failed to provide sufficient facts from which a reasonable trier of fact could conclude Defendant set in motion a series of acts which she knew, or should

---

[6] *See Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")

have known, would cause others to inflict constitutional injury. Accordingly, Plaintiff's individual capacity claim fails.

**IT IS THEREFORE ORDERED** granting Defendant's Motion for Summary Judgment (Doc. 57).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment in favor of Defendant Jeri Williams and to close this case.

Dated this 7th day of February, 2024.

Honorable John J. Tuchi
United States District Judge